1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

NICHOLE B.,

7
                            Plaintiff,

8          v.

COMMISSIONER OF SOCIAL
9   SECURITY,

10                          Defendant.

Case No. 2:19-cv-01228

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12       Plaintiff has brought this matter for judicial review of Defendant's denial of her

13   application for supplemental security income ("SSI") benefits.

14        The parties have consented to have this matter heard by the undersigned

15   Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16   MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred,

17   and the ALJ's decision is reversed and remanded for further proceedings.

18                            I.      ISSUES FOR REVIEW

19       1.  Did the ALJ err in evaluating medical opinion evidence?
         2.  Did the ALJ properly evaluate Plaintiff's symptom testimony?
20

21                            II.      BACKGROUND

22       Plaintiff filed applications for SSI in 2009 and 2011, both of which were denied.

23   AR 91, 111-14, 193-200. Plaintiff filed a third application for SSI on December 20, 2013,

24   alleging a disability onset date of November 1, 2006. AR 23, 182-87. Plaintiff amended

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

her alleged onset date to December 20, 2013. AR 43-44, 499. Plaintiff's application was denied upon initial administrative review and on reconsideration. AR 23, 121-29, 133-37.

A hearing was held before Administrative Law Judge ("ALJ") Kelly Wilson on June 26, 2015. AR 39-79, 702-42. On January 6, 2016, ALJ Wilson decided Plaintiff was not disabled. AR 20-33, 547-60. The Social Security Appeals Council denied Plaintiff's request for review on May 26, 2017. AR 1-6, 566-71.

On April 3, 2018, this Court issued an order reversing the ALJ's decision and remanding this case for the ALJ to re-assess the limitations assessed by non-examining state agency psychologist Gary Nelson, Ph.D. AR 572-80. On May 8, 2018, the Appeals Council vacated the ALJ's decision and issued an order remanding the case for further administrative proceedings consistent with the Court's order. AR 581-84.

On March 18, 2019, ALJ Rebecca Jones held a new hearing. AR 494-546. On April 17, 2019, ALJ Jones issued a written decision finding that Plaintiff was not disabled. AR 469-85. Plaintiff seeks judicial review of the ALJ's April 17, 2019 written decision. Dkt. 1.

III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

1

## IV.   DISCUSSION

2      In this case, the ALJ found that Plaintiff had the severe, medically determinable

3  impairments of Chiari I malformation with headaches (status post craniectomy),

4  scoliosis, and mood disorder, not otherwise specified. AR 474. The ALJ also found that

5  Plaintiff had the non-severe impairments of glaucoma and cannabis abuse. AR 475.

6      Based on the limitations stemming from these impairments, the ALJ found that

7  Plaintiff could perform a reduced range of light work. AR 477. Relying on vocational

8  expert ("VE") testimony, the ALJ found that Plaintiff did not have any past relevant work,

9  but could perform other light, unskilled jobs at step five of the sequential evaluation;

10  therefore the ALJ determined at step five that Plaintiff was not disabled. AR 484-85,

11  535-37.

12      A.  Whether the ALJ properly evaluated medical opinion evidence

13      Plaintiff maintains that the ALJ erred in evaluating opinion evidence from non-

14  examining state agency psychologist Gary L. Nelson, Ph.D. and examining physician

15  W. Daniel Davenport, M.D. Dkt. 8, pp. 3-7.

16      In assessing an acceptable medical source – such as a medical doctor – the ALJ

17  must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

18  either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

19  1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*,

20  849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is

21  contradicted, the opinion can be rejected "for specific and legitimate reasons that are

22  supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing

23  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d

24  499, 502 (9th Cir. 1983)).

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### 1. Dr. Nelson

Dr. Nelson offered an opinion concerning Plaintiff's work-related mental limitations on July 14, 2014. AR 107-09. Dr. Nelson opined that Plaintiff was capable of understanding, remembering, and carrying out routine, repetitive tasks, as indicated by her presentation on examination, and her self-reported functioning, which includes caring for three young children, but would have more difficulty carrying out complex tasks due to a decreased ability to focus stemming from mood lability. AR 108.

Dr. Nelson further opined that Plaintiff was capable of superficial interaction with coworkers and supervisors, but due to increased anxiety in crowds she would work best when not interacting significantly with the general public. *Id.* Dr. Nelson also found that Plaintiff could respond to simple variations in a work setting. AR 109.

The ALJ gave "some weight" to Dr. Nelson's opinion, reasoning that while many of the limitations contained in his opinion were consistent with the record: (1) Plaintiff's limited mental health treatment, the observations of treating providers, and Plaintiff's "full day of activities" indicate that she can perform at least simple tasks at reasoning levels 1 through 3; (2) Plaintiff's normal presentation during examinations indicates she is capable of at least occasional and superficial contact with coworkers, supervisors and the public; and (3) even when Plaintiff's symptoms were exacerbated by situational stressors, her anxiety was no more than mild. AR 483.

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ assessed a range of work-related mental limitations consistent with Dr. Nelson's opinion, and found that Plaintiff could have occasional, superficial contact with supervisors after an initial training period. AR 477.

Plaintiff contends that the ALJ erred by modifying the limitation assessed by Dr. Nelson to say that Plaintiff could have occasional, superficial contact with supervisors after an "initial training period", and failing to provide any reason for not including Dr. Nelson's precise opinion in the RFC. Dkt. 8, pp. 3-5. In its remand order, this Court found that ALJ Wilson erred in her 2016 opinion by assigning "some weight" to Dr. Nelson's opinion, but not including any limitations regarding interaction with supervisors in Plaintiff's RFC. AR 27, 31, 575-79.

The ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). To the extent that an ALJ accepts a physician's opinion, he or she must incorporate the limitations contained in that opinion into the RFC. *See Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir. 1989). When the RFC is incomplete, the hypothetical question presented to the vocational expert at step five is also incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

First, the ALJ only assigned "some weight" to Dr. Nelson's opinion, and provided reasons for doing so, which Plaintiff does not challenge. AR 483. Second, even when adopting a physician's opinion, an ALJ does not err by assessing RFC limitations consistent with, but not identical to, those contained in the opinion. *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1222-23 (9th Cir. 2010). Third, it is unclear, and Plaintiff does not explain, how the addition of the phrase "after the initial training period" meaningfully alters Dr. Nelson's opinion, since an individual would only be expected to perform the full duties associated with a position after their training was complete. *See Valentine v.*

1  *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (rejecting an invitation to

2  find that the ALJ failed to account for a claimant's injuries "in some unspecified way"

3  when the claimant did not detail what other limitations flow from the evidence of his

4  injuries, beyond the limitations already listed in the RFC).

5        Accordingly, the ALJ did not err in evaluating Dr. Nelson's opinion.

6        2.  <u>Dr. Davenport</u>

7        Dr. Davenport examined Plaintiff on March 6, 2014. AR 403-08. Based on the

8  results of his examination and his review of the medical record, Dr. Davenport opined

9  that Plaintiff would be able to sit, stand and/or walk for six hours in an eight-hour

10  workday, and lift 10 pounds occasionally due to right sided pain, poor conditioning, and

11  weight loss. AR 407. Dr. Davenport further opined that Plaintiff could occasionally

12  engage in postural maneuvers due to right sided pain, and could never be exposed to

13  heights, heavy machinery, temperature extremes, or pulmonary irritants. *Id.* Dr.

14  Davenport stated that Plaintiff could frequently reach, handle, finger, and feel, but could

15  perform these activities occasionally with her right hand due to decreased sensation,

16  cramping, and aching. *Id.*

17        The ALJ gave "minimal weight" to Dr. Davenport's opinion, reasoning that his

18  opinion that Plaintiff could sit, stand and/or walk for six hours in an eight-hour period

19  was consistent with the record, but: (1) Dr. Davenport's opinion that Plaintiff could lift no

20  more than 10 pounds occasionally is inconsistent with Plaintiff's daily activities as a

21  parent of three young children, including a 20-month-old toddler; and (2) Dr.

22  Davenport's opinion that Plaintiff would be limited to only occasional manipulative

23  activities is also based primarily on his findings of significant upper extremity weakness,

24

25

1    which is not consistent with the results of a physical examination conducted by Plaintiff's

2    treating neurologist. AR 483.

3           With respect to the ALJ's first reason, a claimant's participation in everyday

4    activities indicating capacities that are transferable to a work setting may constitute a

5    specific and legitimate reason for discounting a medical opinion. *See Morgan v. Comm'r*

6    *Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

7           In a September 2011 function report, Plaintiff stated she had difficulty lifting

8    heavy objects. AR 218, 220, 222. In a January 2014 function report, Plaintiff stated she

9    could not lift more than five pounds. AR 253, 257. In 2019, Plaintiff testified that the

10   heaviest object she was able to lift recently was a gallon of milk, and testified elsewhere

11   that her seven-year-old daughter helped her remove the milk from the refrigerator. AR

12   69, 524. In an August 2018 statement not evaluated by the ALJ, Plaintiff's sister also

13   stated that Plaintiff was having difficulty lifting heavy objects. AR 774.

14           The record contains limited information concerning Plaintiff's precise childcare

15   responsibilities, and Plaintiff's responsibility to care for small children is not, by itself, a

16   specific and legitimate reason for discounting Dr. Davenport's opinion concerning

17   Plaintiff's lifting and carry capacity. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir.

18   2017) (finding that in cases where there is limited information concerning an individual's

19   childcare responsibilities, the mere fact that a claimant cares for small children does not

20   constitute an adequately specific conflict with her reported limitations, and noting that

21   many home activities are not easily transferable to what may be the more grueling

22   environment of the workplace, where it might be impossible to periodically rest or take

23

24

25

1   medication, as individuals caring for children at home can readily do) (internal citation

2   omitted).

3       Further, to the extent the record contains information about Plaintiff's childcare

4   responsibilities, it is consistent with Dr. Davenport's opinion concerning Plaintiff's lifting

5   and carrying limitations.

6       Plaintiff lost custody of her two daughters in 2018; she testified that she had been

7   unable to lift her son since he was a one-year-old, and stated that her son is able to

8   climb into his bed without assistance. AR 59, 70, 404, 501. Plaintiff testified that she

9   took her children to school and performed certain household chores, but had difficulty

10  doing so without assistance from her children, her boyfriend, or her friends, and

11  required assistance unloading her groceries. AR 60-61, 253, 256, 404, 527-28, 532.

12      Accordingly, the ALJ has not provided a specific and legitimate reason for

13  discounting the lifting and carrying limitations assessed by Dr. Davenport.

14      Regarding the ALJ's second reason, the ALJ has not cited a specific examination

15  that produced different results concerning Plaintiff's manipulative limitations from those

16  contained in Dr. Davenport's opinion, and has not named the physician who conducted

17  this examination, although Plaintiff's treating neurologist is listed as Hoang Le, M.D. AR

18  466.

19      The Social Security Administration must set forth the reasoning behind its

20  decisions in a way that allows for meaningful review, and the ALJ must build an

21  accurate and logical bridge from the evidence to his or her conclusions. *See Brown-*

22  *Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also Embrey v. Bowen*, 849

23  F.2d 418, 421 (9th Cir. 1988) (An ALJ errs when he or she "merely states" that facts

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

1  "point toward an adverse conclusion" yet "makes no effort to relate any of these" facts to

2  "the specific medical opinions and findings he rejects.").

3      Further, even if the results of one of Dr. Le's examinations concerning Plaintiff's

4  manipulative limitations were inconsistent with the results of Dr. Davenport's, this

5  inconsistency would not, by itself, be a specific and legitimate reason for discounting Dr.

6  Davenport's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1017-18 (2014) (finding that

7  the ALJ erred by improperly singling out a few periods of temporary well-being from a

8  sustained period of impairment and relied on those instances to discredit a claimant);

9  *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.2007) (The Court must

10  consider the entire record as a whole, weighing both the evidence that supports and

11  detracts from the Commissioner's finding, and may not affirm simply by isolating a

12  specific quantum of supporting evidence.")

13      Defendant cites other examinations from the period at issue which are

14  inconsistent with Dr. Davenport's finding that Plaintiff could only occasionally reach,

15  handle, finger, and feel. Dkt. 9, pp. 9-10, citing AR 417, 419, 461, 468, 843, 848. Yet the

16  ALJ did not cite these examinations in discounting Dr. Davenport's opinion; relying on

17  this evidence to affirm the ALJ's decision would constitute an improper post-hoc

18  rationalization. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (The Court

19  cannot affirm an ALJ's decision on a ground that the agency did not invoke in making its

20  decision) (internal citations omitted).

21      The ALJ has not provided a specific and legitimate reason for discounting Dr.

22  Davenport's opinion concerning Plaintiff's manipulative limitations.

23

24

25

1

B.  Whether the ALJ erred in evaluating Plaintiff's testimony

2   Plaintiff contends that the ALJ failed to provide clear and convincing reasons for

3   discounting her symptom testimony. Dkt. 8, pp. 7-16.

4   In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*

5   *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether

6   there is objective medical evidence of an underlying impairment that could reasonably

7   be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763

8   F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no

9   evidence of malingering, the second step allows the ALJ to reject the claimant's

10  testimony of the severity of symptoms if the ALJ can provide specific findings and clear

11  and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v.*

12  *Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

13  In discounting Plaintiff's symptom testimony, the ALJ reasoned that: (1) Plaintiff's

14  allegations concerning her physical and mental impairments are inconsistent with the

15  medical record; (2) Plaintiff's allegations concerning her back pain are inconsistent with

16  her ability to bear the strain of carrying three pregnancies to term since her alleged

17  onset date; (3) Plaintiff's "extensive" marijuana use may contribute to her physical

18  symptoms; (4) there was a gap of seven months between Plaintiff's neurology

19  appointments, and Plaintiff did not follow up with her neurologist's recommendation that

20  she seek a second opinion from a physician with more specialized experience; (5)

21  Plaintiff's activities of daily living are inconsistent with her allegations; (6) Plaintiff has

22  received minimal and infrequent treatment for her mental health impairments, and one

23  of her medications was effective at controlling her anxiety symptoms; (7) Plaintiff's

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

allegations concerning frequent fainting spells and panic attacks are contradicted by the record, which contains no evidence that she experienced either; (8) even when exacerbated by situational stressors, Plaintiff's anxiety was still relatively mild; and (9) Plaintiff has a poor work history, which suggests she is not highly motivated to work. AR 479-82.

With respect to the ALJ's first reason, inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

In citing Plaintiff's poor work history, the ALJ has provided an additional clear and convincing reason for discounting Plaintiff's testimony. An ALJ will consider evidence about an individual's prior work record when evaluating symptoms, and a good work history over an extended period can enhance a claimant's credibility. *See* 20 C.F.R. § 416.929(c)(3); *see also Archer v. Apfel*, 66 Fed.Appx. 121, 121 (9th Cir. 2003).

By the same token, the fact that a claimant has "an extremely poor work history" and "has shown little propensity to work in her lifetime" can serve as a clear and convincing reason to discredit a claimant's alleged inability to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

1    Here, Plaintiff, who is nearly 31 years old, has never worked or actively sought

2    employment, with the exception of $2,160.00 of unexplained self-employment income in

3    2016. AR 696, 698.

4    During the 2015 hearing, Plaintiff testified that she was unable to work because

5    her ex-husband, whom she divorced in 2012, would not allow it. AR 45-46. Plaintiff

6    testified that she was unable to work after 2012 because of anxiety that was

7    exacerbated by the death of her father in 2013, and frequent panic attacks, also

8    triggered by personal stressors, that caused her to pass out nine times in the preceding

9    year. AR 46-48.

10    Plaintiff acknowledged that she never went to the emergency room after passing

11    out, and instead reported the incidents to her primary care physician later. AR 47.

12    During the 2019 hearing, Plaintiff re-stated her allegations, testifying that she was still

13    having two or three panic attacks per day, and never sought employment because she

14    felt she would be a liability due to her frequent blackouts and balance problems. AR

15    507-. Plaintiff testified that she only started having balance problems at age 22, but

16    stated that she was unable to work before age 22 due to scoliosis. AR 508.

17    As discussed above, the ALJ found that Plaintiff's allegations concerning

18    frequent fainting spells and panic attacks were contradicted by the record, which

19    contains no evidence that she experienced either to the extent she alleges. AR 481.

20    An ALJ may reject a claimant's symptom testimony when it is contradicted by the

21    medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161

22    (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the

23

24

25

1    ALJ must explain how the medical evidence contradicts the claimant's testimony. *See*

2    *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

3        Here, the ALJ found that Plaintiff's allegations concerning her frequent anxiety-

4    related fainting spells were contradicted by the record, which indicates that none of

5    Plaintiff's treatment providers observed that she had such spells. AR 481. The ALJ also

6    noted that if Plaintiff had a medical condition that presented a syncope or fall risk, this

7    would have been of utmost concern during her pregnancies, but Plaintiff's treatment

8    providers noted no such risks during the course of pregnancies. AR 326, 367-70, 481,

9    945.

10       The ALJ's finding is consistent with interviews and examinations conducted

11   during the period at issue, which indicate that Plaintiff occasionally mentioned dizziness

12   and fainting symptoms, but did not otherwise complain of, or exhibit symptoms

13   consistent with, her allegations concerning frequent anxiety related fainting spells. *See*

14   *e.g.* AR 396-98, 412, 416, 434, 459-62, 467-68, 794, 810-11, 816, 819, 842-43, 893-95,

15   898-99, 905, 908, 924, 998-1000, 1005.

16       As the ALJ noted, Plaintiff also reported rollerblading, an extremely unsafe

17   activity for an individual allegedly prone to balance problems, anxiety attacks, and

18   frequent fainting spells. AR 481, 1037; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)

19   (noting that an ALJ may cite a claimant's activities of daily living as a reason for

20   discounting symptom testimony when the claimant's participation in those activities

21   contradict the claimant's other testimony).

22       In citing the inconsistency of Plaintiff's allegations with the medical record,

23   Plaintiff's poor work history, contradictions between Plaintiff's testimony and the record,

24

25

1   and inconsistencies between Plaintiff's testimony and her activities of daily living such

2   as rollerblading, the ALJ has provided clear and convincing reasons for discounting her

3   testimony.

4        While the ALJ has provided additional clear and convincing reasons for

5   discounting Plaintiff's testimony, the Court need not assess whether these reasons were

6   proper, as any error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed.

7   Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

8   F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to

9   discount a medical opinion, "this error was harmless because the ALJ gave a reason

10  supported by the record" to discount the opinion).

11       C. Remand for Further Proceedings

12       Plaintiff asks this Court to remand this case for an award of benefits. Dkt. 8, at

13  16. "'The decision whether to remand a case for additional evidence, or simply to award

14  benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682

15  (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an

16  ALJ makes an error and the record is uncertain and ambiguous, the court should

17  remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

18  (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

19  the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

20  at 668.

21       The Ninth Circuit has developed a three-step analysis for determining when to

22  remand for a direct award of benefits. Such remand is generally proper only where

23       "(1) the record has been fully developed and further administrative
         proceedings would serve no useful purpose; (2) the ALJ has failed to

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 14

provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ erred in assessing the opinion of Dr. Davenport concerning Plaintiff's physical limitations. However, the ALJ's decision is otherwise supported by substantial evidence, and there remains significant doubt concerning whether Plaintiff is disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (courts have the flexibility to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled within the meaning of the Social Security Act.). Accordingly, remand for further proceedings is the appropriate remedy.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she found Plaintiff to be not disabled. Defendant's decision to deny benefits is therefore REVERSED and this matter is REMANDED for further administrative proceedings.

The ALJ is directed to re-assess the opinion of Dr. Davenport and to evaluate any significant, probative evidence, such as the August 2018 statement from Plaintiff's sister, not previously considered by the ALJ. AR 774.

Dated this 30th day of September, 2020.


Theresa L. Fricke
United States Magistrate Judge